Exhibit "1"

# BANK OF AMERICA EQUITY MAXIMIZER® AGREEMENT AND DISCLOSURE STATEMENT

**ACCOUNT NUMBER**

Borrower: MAXIMINO RODRIGUEZ
MARIA E. RODRIGUEZ

Lender: Bank of America, N.A.
c/o North Carolina Main Office
101 Tryon Street
Charlotte, N.C. 28255

CREDIT LIMIT: $ 40,000.00    DATE OF AGREEMENT:   12 / 10  / 04

**Introduction.** This Bank of America Equity Maximizer ® Agreement and Disclosure Statement ("Agreement") governs your line of credit (the "Equity Maximizer Account") issued through Bank of America, N.A. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our," and "Lender" mean Bank of America, N.A. **You agree to the following terms and conditions:**

**Promise to Pay.** You promise to pay Bank of America, N.A., or order, the total of all credit advances and **FINANCE CHARGES,** together with all costs and expenses for which you are responsible under this Agreement or under the "Security Instrument" which secures your Equity Maximizer Account (**"Security Instrument"**). You will pay your Equity Maximizer Account according to the payment terms set forth below. **If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any Borrower to pay all amounts due under this Agreement, including credit advances made to any Borrower. Each borrower authorizes any other borrower, on any other borrower's signature zlone, to cancel the Equity Maximizer Account, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any Borrower from responsibility under this Agreement, and the others will remain responsible.**

**Term.** The term of your Equity Maximizer Account will begin as of the date of this Agreement ("Opening Date") and will continue until    DECEMBER 10th, 2029     ("Maturity Date"). All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable upon maturity. The draw period of your Equity Maximizer Account will begin on the date after the Opening Date following the expiration of the right to cancel, the perfection of the Security Instrument securing this agreement, receipt of all required certificates of noncancellation, and the meeting of all our other conditions and will continue as follows: 120 months ("Draw Period"). You may obtain credit advances during this Draw Period. After the Draw Period ends, the Repayment Period will begin and you will no longer be able to obtain credit advances. The length of the Repayment Period is as follows: up to 180 months depending on the payment schedule set forth below. You agree that we may renew or extend the period during which you may obtain credit advances or make payments. Notwithstanding the foregoing, in no event will the time during which you may obtain credit advances on the Equity Maximizer Agreement exceed twenty-five (25) years.

## Minimum Payment

**During the Draw Period.** The "Total Minimum Payment Due" is equal to the Variable Rate Balance Minimum Payment below, the payment due, if any, for any outstanding Fixed Rate Loan Option and any past due amounts from prior billing periods. (Some Fixed Rate Loan Options may have a different due date and are not figured in the calculation of the Total Minimum Payment Due). At any time you may pay more than the Total Minimum Payment Due, make additional payments or pay in full or in part the Outstanding Balance. The "Outstanding Balance" is the new balance of the Equity Maximizer Account (which, if applicable, includes principal, accrued interest on the outstanding principal, fees and charges, Property Expenses (defined as any expense which we incur because you do not fulfill all obligations of this Agreement or if you or another party does not fulfill all obligations of the Security Instrument for the property which secures this Agreement) and any voluntary insurance or Borrowers Protection Plan™. We reserve the right to apply payments in any manner we choose, without notice. Your "Variable Rate Balance" is all of your Outstanding Balance that is not part of a Fixed Rate Loan Option.

You may choose any of the following monthly and quarterly Draw Period payment options. Your billing statement will reflect the option you have chosen. You may also change your Draw Period payment option at a later time.

> **Variable Rate Balance Minimum Payment** – Depending on what payment schedule option you choose for the Draw Period, the Variable Rate Balance Minimum Payment may vary. The Variable Rate Balance Minimum Payment will not be less than the amount of accrued interest and any voluntary insurance, plus any unpaid fees.

Reference No:   California

Case: 14-52923   Doc# 26-5   Filed: 06/28/16   Entered: 06/28/16 16:27:51   Page 2 of 32

**Monthly Payment Options:**
**Interest Only Option** – The Minimum Payment will be the amount of accrued interest, plus any unpaid fees.

**1.5% of Variable Rate Outstanding Balance Option** – The Minimum Payment will be one and one half percent (1.5%) of the Variable Rate Outstanding Balance plus any unpaid fees, or fifty dollars ($50), whichever is greater, or the Variable Rate Outstanding Balance if less than the Minimum Payment.

**Fixed Payment Option** – The Minimum Payment will be at least one and one half percent (1.5%) of the Equity Maximizer Account limit plus any unpaid fees, or fifty dollars ($50), whichever is greater, or the Variable Rate Outstanding Balance if less than the Minimum Payment.

**Quarterly Payment Options:**
**Interest Only Option** – The Minimum Payment will be the amount of accrued interest and unpaid fees.

**4.5% of Variable Rate Outstanding Balance Option** – The Minimum Payment will be four and one half percent (4.5%) of the Variable Rate Outstanding Balance plus any unpaid fees, or one hundred fifty dollars ($150), whichever is greater, or the Variable Rate Outstanding Balance if less than the Minimum Payment.

**Fixed Payment Option** – The Minimum Payment will be at least four and one half percent (4.5%) of the Equity Maximizer Account limit plus any unpaid fees, or one hundred fifty dollars ($150), whichever is greater, or the Variable Rate Outstanding Balance if less than the Minimum Payment.

**During the Repayment Period.** The payment frequency you select for the Draw Period is the same for the Repayment Period. The length of the Repayment Period will vary depending on the Outstanding Balance at the beginning of the Repayment Period if any Property Expenses are incurred during the Repayment Period and if you have any Fixed Rate Loan Options. The amount of the Total Minimum Payment Due may vary due to increases or decreases in the Index or if there are any Fixed Rate Loan Options that remain unpaid at the beginning of the Repayment Period.

You may choose either the following monthly or quarterly Repayment Period payment option. Your billing statement will reflect the option you have chosen. You may also change your Repayment Period payment option at a later time.

**Monthly Payment Option** – The Total Minimum Payment Due will be an amount equal to the greater of 1/180th of the Variable Rate Principal Balance remaining on the last day of the Draw Period, plus accrued interest, unpaid fees, unpaid Property Expenses and any voluntary insurance, or fifty dollars ($50). If there are any Fixed Rate Loan Options that remain unpaid at the start of the Repayment Period, the Fixed Rate Loan Option payments previously established will continue to be billed.

**Quarterly Payment Option** – The Total Minimum Payment Due will be an amount equal to the greater of 1/60th of the Variable Rate Principal Balance remaining on the last day of the Draw Period, plus accrued interest, unpaid fees and unpaid Property Expenses, or one hundred fifty dollars ($150). If there are any Fixed Rate Loan Options that remain unpaid at the start of the Repayment Period, the Fixed Rate Loan Option payments previously established will continue to be billed.

**How Your Payments Are Applied.** Unless otherwise agreed or required by applicable law, payments and other credits will be applied to FINANCE CHARGES, other charges and fees, and principal in any order we choose without notice.

**Receipt of Payments.** All payments must be made by a check, automatic account debit, electronic funds transfer, money order, or other instrument in U.S. dollars and must be received by us at the remittance address shown on your periodic billing statement. Payments received at that address prior to 2:00 P.M. local time at the location specified, or a payment made at one of our banking centers in the state of our address first described above, by 2:00 P.M. local time on any business day will be credited to your Equity Maximizer Account as of the date received. If we receive payments at other locations, such payments will be credited promptly to your Equity Maximizer Account, but crediting may be delayed for up to five (5) days after receipt. Business days are Monday through Friday, exclusive of legal holidays. If the due date falls on a Saturday, Sunday or legal holiday, the due date will not be extended.

**Credit Limit.** This Agreement covers a revolving line of credit for the principal amount of Forty Thousand and 00/100'S        Dollars ($   40,000.00     ), which will be your "Credit Limit" under this Agreement. **During the Draw Period we will honor your request for credit advances subject to the section below on Lender's Rights.** You may borrow against the Equity Maximizer Account, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. Your Credit Limit is the maximum amount you may have outstanding at any one time. You agree not to attempt, request, or obtain a credit advance that will make

Case: 14-52923   Doc# 26-5   Filed: 06/28/16   Entered: 06/28/16 16:27:51   Page 3 of 32

your Equity Maximizer Account balance exceed your Credit Limit. You agree to repay immediately the amount by which your Equity Maximizer Account exceeds your Credit Limit, even if we have not yet billed you. Any credit advances in excess of your Credit Limit will not be secured by the Security Instrument covering your principal dwelling.

**Charges to your Equity Maximizer Account.** We may charge your Equity Maximizer Account to pay other fees and costs that you are obligated to pay under this Agreement, the Security Instrument (such as a mortgage or deed of trust) or any other document related to your Equity Maximizer Account. In addition, we may charge your Equity Maximizer Account for funds required for continuing insurance coverage as described in the paragraph titled "Insurance" below or as described in the Security Instrument for this transaction. We may also, at our option, charge your Equity Maximizer Account to pay any costs or expenses to protect or perfect our security interest in your principal dwelling. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your principal dwelling. If you do not pay your property taxes, we may charge your Equity Maximizer Account and pay the delinquent taxes. Any amount so charged to your Equity Maximizer Account will be a credit advance and will decrease the funds available, if any, under the Equity Maximizer Account. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**Credit Advances.** After the Effective Disbursement Date of this Agreement, as stated on the signature page of this Agreement, you may obtain credit advances under your Equity Maximizer Account where available as follows:

> **Equity Maximizer Account Checks.** Writing a preprinted "Special Convenience Check" that we will supply to you.

> **Telephone Request.** Requesting a credit advance from your Equity Maximizer Account to be applied to your designated account by telephone upon proper identification and in accordance with procedures established by us. Except for transactions covered by the federal Electronic Fund Transfer Act and unless otherwise agreed in your deposit account agreement, **you acknowledge and you agree that we do not accept responsibility for the authenticity of telephone instructions and that we will not be liable for any loss, expense, or cost arising out of any telephone request, including any fraudulent or unauthorized telephone request, when acting upon such instructions believed to be genuine.**

> **Requests in Person.** Requesting a credit advance in person at any of our authorized locations.

> **ATM Access (Not available in ID, OR and WA).** Use your Bank of America ATM card or Bank of America Check Card or "Bank of America Equity Maximizer ® Visa ® account access card" ("Account Access Card") at any of our designated ATM locations. **(In CA, ATM Access is only available thru the Bank of America Equity Maximizer Visa account access card.)**

> **Bank of America Equity Maximizer Visa Account Access Card (Not available in ID, OR and WA).** Use the Account Access Card as described in this Agreement.

> **Online Banking.** Transferring funds to the deposit account that you designate.

If there is more than one person authorized to use this Equity Maximizer Account, you agree not to give us conflicting instructions, such as one of you telling us not to give advances to the other.

**Limitations on the Use of Checks.** We reserve the right not to honor Special Convenience Checks in the following circumstances:

> **Credit Limit Violation.** Your Credit Limit has been or would be exceeded by paying the Special Convenience Check.

> **Post-dated Checks.** Your Special Convenience Check is post-dated. If a post-dated Special Convenience Check is paid and as a result any other check is returned or not paid, we are not responsible.

> **Stolen Checks.** Your Special Convenience Checks have been reported lost or stolen.

> **Unauthorized Signatures.** Your Special Convenience Check is not signed by an "Authorized Signer" as defined herein.

> **Termination or Suspension.** Your Equity Maximizer Account has been terminated or suspended as provided in this Agreement or could be if we paid the Special Convenience Check.

> **Other Restrictions/Other Limitations.** (1) You may not make a payment on the Account with a Special Convenience Check. (2) You notify us that you wish to stop payment of a Special Convenience Check or however you will not hold us liable if we try to stop payment of the Special Convenience Check and we are unable to do so. You may try to stop payment on a Special Convenience Check by notifying Customer Service at the number listed on your statement. Your stop payment order will remain in effect for six (6) months unless renewed.

Case: 14-52923    Doc# 26-5    Filed: 06/28/16    Entered: 06/28/16 16:27:51    Page 4 of 32

If we pay any Special Convenience Check under these conditions, you must repay us, subject to applicable laws, for the amount of the Special Convenience Check. The Special Convenience Check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. We may choose not to return Special Convenience Checks along with your periodic billing statement; however, your use of each Special Convenience Check will be reflected on your periodic statement as a credit advance. We do not "certify" Special Convenience Checks drawn on your Equity Maximizer Account.

**Limitations on the Use of Account Access Card.** We reserve the right not to honor Account Access Cards in the following circumstances:

> **Credit Limit Violation.** Your Credit Limit has been or would be exceeded by honoring the Account Access Card charge.

> **Stolen Account Access Card.** Your Account Access Card has been reported lost or stolen.

> **Termination or Suspension.** Your Equity Maximizer Account has been terminated or suspended as provided in this Agreement or could be if we honored the Equity Maximizer Account charge.

If we pay any advance requested by use of the Account Access Card under these conditions, you must repay us, subject to applicable laws, for the amount of the advance. The advance itself will be evidence of your debt to us together with the Agreement. Our liability, if any, for wrongful dishonor of an advance is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. Your use of the Account Access Card will be reflected on your periodic statement as a credit advance.

**Transaction Requirements.** The following transaction limitations will apply to the use of your Equity Maximizer Account:

> **Account Access Card Limitations.** The following transaction limitations will apply to your Equity Maximizer Account and accessing by other methods.

> **Other Transaction Requirements. Limitations on the Use of Account Access Card.** We reserve the right not to honor the account access card linked to this Equity Maximizer Account in the following circumstances:

>> **Credit Limit Violation.** Your Credit Limit has been or would be exceeded by paying the Account Access Card transaction.

>> **Stolen Account Access Card.** Your Account Access Card has been reported lost or stolen.

>> **Unauthorized Signatures.** Your Account Access Card is not used by a Borrower who has been issued one.

>> **Termination or Suspension.** Your Equity Maximizer Account has been terminated or suspended as provided in the Agreement or could be if we paid the Account Access Card transaction.

If we pay any advance requested by use of the Account Access Card under these conditions, you must repay us, subject to applicable laws, for the amount of the advance. The advance itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of an advance is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. Your use of the Account Access Card will be reflected on your periodic statement as a credit advance.

**Liability for Unauthorized Account Access Card Transactions.** You are not liable for unauthorized use of your Account Access Card. Just notify us promptly if you believe your Account Access Card has been lost or stolen or if you discover any unauthorized transactions. We may require you to provide a written statement regarding claims of unauthorized Account Access Card transactions.

**VISA is a registered trademark of VISA International Service Association.**

> Lender's liability, if any, for wrongful dishonor of an advance request is limited to Borrower's actual damages. Lender shall not be liable if any merchant, financial institution or ATM refuses to honor the Account Access Card.

**Equity Maximizer Account Special Convenience Check, Telephone Request, In Person Request and ATM Access Limitations.** There are no transaction limitations for the writing of Special Convenience Checks, requesting an advance by telephone, or requesting an advance in person.

**Authorized Signers.** The words "Authorized Signer" on Special Convenience Checks and Account Access Cards as used in this Agreement mean and include each person who (a) signs the application for this Equity Maximizer Account, (b) signs this Agreement, or (c) has executed a separate signature authorization card for the Equity Maximizer Account.

Case: 14-52923   Doc# 26-5   Filed: 06/28/16   Entered: 06/28/16 16:27:51   Page 5 of 32

**Lost Special Convenience checks and Account Access Cards.** If you lose your Special Convenience Checks or Account Access Cards or if someone is using them without your permission, you agree to let us know immediately. You can notify us at our address shown at the beginning of this Agreement.

**Prohibited Uses.** You agree not to use any Equity Maximizer Account credit advances to make payments on your Equity Maximizer Account.

**Future Equity Maximizer Account Services.** Your application for this Equity Maximizer Account also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with this Equity Maximizer Account. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement will govern any transactions made pursuant to any of these new services.

**Collateral.** You acknowledge this Agreement is secured by the following collateral described in the Security Instrument securing this Agreement, listed herein, all the terms and conditions of which are hereby incorporated and made a part of this Agreement, a Deed of Trust dated DECEMBER 10th, 2004 , to us on real property located in MONTEREY County, state of California.

**Insurance.** You must obtain insurance on the Property securing this Agreement that is reasonably satisfactory to us. You may obtain property insurance through any company of your choice that is reasonably satisfactory to us. You have the option of providing any insurance required under this Agreement through an existing policy or a policy independently obtained and paid for by you, subject to our right, for reasonable cause before credit is extended, to decline any insurance provided by you. Subject to applicable law, if you fail to obtain or maintain insurance as required in the mortgage or deed of trust, we may purchase insurance to protect our own interest, add the premium to your balance, pursue any other remedies available to us, or do any one or more of these things.

**Periodic Statements.** If you have a balance owing on your Equity Maximizer Account or have any account activity, we will send you a periodic statement. It will show, among other things, credit advances, **FINANCE CHARGES**, other charges, payments made, other credits, your "Previous Balance," and your "New Balance." Your statement also will identify the Minimum Payment you must make for that billing period and the date it is due.

When **FINANCE CHARGES** Begin to Accrue. Periodic **FINANCE CHARGES** for credit advances under your Equity Maximizer Account will begin to accrue on the date credit advances are posted to your Equity Maximizer Account. There is no "free ride period" which would allow you to avoid a **FINANCE CHARGE** on your Equity Maximizer Account credit advances.

If you choose to establish automatic payment to draft your designated Bank of America account, the authorization will remain in full force and effect until the Bank has received written or verbal notification from you of its termination in such time and in such manner as to afford the Bank a reasonable opportunity to act on it. If at any time you select to terminate your automatic payment, your Margin will increase by 1/4%.

**HOW THE BALANCE ON WHICH THE FINANCE CHARGE IS CALCULATED IS DETERMINED.** The cost of the credit through the Equity Maximizer Account is disclosed as a Finance Charge. Except for some closing costs (indicated in this Agreement), interest will not accrue until a credit advance is made. You will pay interest on each credit advance until it is fully paid off. We will determine the **FINANCE CHARGE** for each monthly billing period by using the following simple interest rate calculation. A **FINANCE CHARGE** is calculated daily for that portion of the principal balance that is not payable under a Fixed Rate Loan Option ("Variable Rate Principal Balance") by multiplying the daily periodic rate (as indicated In "How The Rate is Used To Calculate The Finance Charge is Determined") by the daily Variable Rate Principal Balance. To get the daily Variable Rate Principal Balance we (i) take the beginning Variable Rate Principal Balance for that day (ii) add to that amount all credit advances and sums advanced by us to fulfill any obligations under a Security Instrument (such as a mortgage, deed of trust, or security agreement), if any, for that day, then (iii) subtract all principal balance payments and credits for the Variable Rate Principal Balance for that day. All of the daily Variable Rate Principal Balance **FINANCE CHARGES** for the monthly billing cycle are added to get the total Variable Rate Principal Balance **FINANCE CHARGE** for the monthly billing cycle. Transaction charges, including but not limited to Fixed Rate Loan Option conversion fees, are added to the Variable Rate Principal Balance **FINANCE CHARGE** to get the total **FINANCE CHARGE** for the monthly billing cycle. For Fixed Rate Loan Option balances, the estimated **FINANCE CHARGE** is calculated at the establishment of the Fixed Rate Loan Option and is included in the fixed payment amount.

**HOW THE RATE USED TO CALCULATE THE FINANCE CHARGE IS DETERMINED.** The initial Variable Rate Principal Balance daily periodic rate used to compute the Variable Rate Principal Balance **FINANCE CHARGE** is 1/365 of the initial Variable Rate Principal Balance **ANNUAL PERCENTAGE RATE** (as indicated under "Periodic Rate and Corresponding Annual Percentage Rate"). The Variable Rate Principal Balance **ANNUAL PERCENTAGE RATE** is a variable rate involving both an index and a margin, both described under "Periodic Rate and Corresponding Annual Percentage Rate". Finance Charges will accrue on an actual 365 day

Case: 14-52923   Doc# 26-5   Filed: 06/28/16   Entered: 06/28/16 16:27:51   Page 6 of 32

year basis (366 day year basis for leap year). If, however, you participate in a relationship account with a Bank of America Corporation affiliate (as offered from time to time), the Variable Rate Principal Balance Daily Periodic Rate and the Variable Rate Principal Annual Percentage Rate may be reduced below the rates stated in this Agreement. The addition of a fee may cause the actual Variable Rate Principal Balance Annual Percentage Rate for the monthly billing cycle to exceed the Variable Rate Principal Balance Annual Percentage Rate stated in this Agreement.

If the index is unavailable for any monthly billing cycle, we will use the Index for the most recently preceding monthly billing cycle in which the Index was available. If the Index ceases to be published during the term of this Agreement, we will select a substitute index and margin. The substitute index will have a historical movement substantially similar to the index, and the substitute index and margin will result in an Annual Percentage Rate at the time it is substituted that is substantially similar to the rate in effect at the time the Index became unavailable.

There is no limitation on the size of any interest rate adjustment or the number of interest rate adjustments that may be made on the Equity Maximizer Account so long as the maximum Annual Percentage Rate is not exceeded. Any increase or decrease in the Index that occurs would cause a corresponding increase or decrease in the Daily Periodic Rate, Annual Percentage Rate, Finance Charges and possibly the Total Minimum Payment Due. You understand that adjustments based on an Index change will be applied automatically to the Equity Maximizer Account and you will not receive advance notice of that adjustment.

The Finance Charge on a Fixed Rate Loan Option is determined on a simple interest basis. If you make a Fixed Rate Loan Option payment(s) before or after any date, either the amount of your originally scheduled final payment may be lower or higher than the amount initially established or additional payment(s) may be required.

Under some circumstances, your payment will not cover the Finance Charges that accrue and negative amortization will occur. Negative amortization will increase the total amount you may pay us and reduce the equity in the Property.

**Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE.** We will determine the Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** as follows. We start with an independent index, which is the Prime Rate as published daily in the "Money Rates" table of The Wall Street Journal. When a range of rates has been published, the higher of the rates will be used. Changes in the Annual Percentage Rate will be based on the Index published the last business day prior to the first day of the next monthly billing cycle, plus the Margin, and will be effective on the first day of the next monthly billing cycle (the "Index"). We will use the most recent index value available to us as of the date of any **ANNUAL PERCENTAGE RATE** adjustment. The Index is not necessarily the lowest rate charged by us on our loans. If the Index becomes unavailable during the term of this Equity Maximizer Account, we may designate a substitute index after notice to you. To determine the Periodic Rate that will apply to your First Payment Stream, we add a margin to the value of the Index, and then divide the value by the number of days in a year (daily). To obtain the **ANNUAL PERCENTAGE RATE** we multiply the Periodic Rate by the number of days in a year (daily). This result is the **ANNUAL PERCENTAGE RATE** for your First Payment Stream. To determine the Periodic Rate that will apply to your Second Payment Stream, we add a margin to the value of the Index, and then divide the value by the number of days in a year (daily). To obtain the **ANNUAL PERCENTAGE RATE** we multiply the Periodic Rate by the number of days in a year (daily). This result is the **ANNUAL PERCENTAGE RATE** for your Second Payment Stream. The **ANNUAL PERCENTAGE RATE** includes only interest and no other costs.

The Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** on your Equity Maximizer Account will increase or decrease as the Index increases or decreases from time to time. Any increase in the Periodic Rate will take the form of higher payment amounts. Adjustments to the Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** resulting from changes in the Index will take effect monthly. In no event will the corresponding **ANNUAL PERCENTAGE RATE** be more than the lesser of 24.000% or the maximum rate allowed by applicable law. Today the Index is ___5.000 %___ per annum, and therefore the initial Periodic Rate and the corresponding **ANNUAL PERCENTAGE RATE** on your Equity Maximizer Account are as stated below:

Current Rates for the First Payment Stream

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 0.750 % | 5.750 % | 0.01571038 % |

Current Rates for the Second Payment Stream

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 0.750 % | 5.750 % | 0.01571038 % |

Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed loan proceeds, except as may be permitted during any Right of Rescission period.

Page 6 of 12

**Forgo Rate Increases.** If we forgo an **ANNUAL PERCENTAGE RATE** increase, at the time of the later adjustment we may return to the full Index value plus margin.

**Conditions Under Which Other Charges May Be Imposed.** You agree to pay all the other fees and charges related to your Equity Maximizer Account as set forth below:

    **Scheduled Fee Changes.** To the extent allowed by applicable law, we may increase any or all of the fees and charges described in this Agreement by 20% of the existing fee each calendar year.

    **Other Charges.** Your Equity Maximizer Account may be charged the following other charges: Miscellaneous Charges. The amount of this other charge is: to the extent allowed by applicable law, any other amount incident to the application for and the opening, administration and termination of the Equity Maximizer Account, including, but not limited to, reinstatement of Equity Maximizer Account privileges, processing of nonconforming payments processing and additional expense if an Equity Maximizer Account advance occurs in a foreign country, express courier charges, taxes and any penalties or interest thereon, imposed on this Agreement or on any transaction effected pursuant to this Agreement. We may advance any such cost or tax and any penalty or interest.

    **Annual Fee** – $0 will be charged to the Equity Maximizer Account on or after each anniversary date unless the average daily balance for the past 12 month period is either (i) $15,000 or (ii) 30% of the Line.

    **Fixed Rate Loan Option Conversion Fee** • There is a $0 conversion fee charged for the establishment of each Fixed Rate Loan Option.

    **Late Fee** – If we do not receive the amount of your minimum monthly payment in full within ten (10) days after your payment due date, you will pay us a late charge equal to the greater of $10.00 or five percent (5%) of the unpaid portion of your minimum monthly payment.

    **Returned Special Convenience Check Charge** – There is a $20.00 Returned Special Convenience Check Charge each time an Equity Maximizer Account Draw is rejected for any reason.

    **Returned Payment Charge** – There is a $20.00 Returned Payment Charge each time your payment is returned or if there are insufficient funds in your account when a payment is attempted through automatic repayment service.

**Security Interest Charges.** You agree to pay all security interest charges related to your Equity Maximizer Account as set forth below:

| | | |
|---|---|---|
| Appraisal | $ | 0.00 |
| Title Insurance | $ | 0.00 |
| Title Search | $ | 0.00 |
| Title 3rd party | $ | 0.00 |
| Survey Inspection | $ | 0.00 |
| Environmental Inspection | $ | 0.00 |
| Transfer Fee | $ | 0.00 |
| | | |
| Total | $ | 0.00 |

**Lender's Rights.** Under this Agreement, we have the following rights:

    **Termination and Acceleration.** We can terminate your Equity Maximizer Account and require you to pay us the entire outstanding balance in one payment, and charge you certain fees, if any of the following happens: (1) You commit fraud or make a material misrepresentation at any time in connection with this Agreement. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition. (2) You do not meet the repayment terms of this Agreement. (3) Your action or inaction adversely affects the collateral for the plan or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

    **Suspension or Reduction.** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect:

        (1) The value of your property declines significantly below the property's appraised value for purposes of this Equity Maximizer Account. This includes, for example a decline such that the initial difference between the Credit Limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

Case: 14-52923   Doc# 26-5   Filed: 06/28/16   Entered: 06/28/16 16:27:51   Page 8 of 32

(2) We reasonably believe that you will be unable to fulfill your payment obligations under your Equity Maximizer Account due to a material change in your financial circumstances.

(3) You are in default under any material obligations of this Equity Maximizer Account. We consider all of your obligations to be material. Categories of material obligations include the events described above under Termination and Acceleration, obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the property or proceeds, obligations to pay and perform the terms of any other deed of trust, mortgage or lease of the property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions), and obligations of any comaker. No default will occur until we mail or deliver a notice of default to you, so you can restore your right to credit advances.

(4) We are precluded by government action from imposing the **ANNUAL PERCENTAGE RATE** provided for under this Agreement.

(5) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than one hundred twenty percent (120%) of the Credit Limit.

(6) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice.

**Change in Terms.** We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Equity Maximizer Account, or if the change is insignificant (such as changes relating to our data processing systems). If the Index is no longer available, we will choose a new Index and margin. The new index will have a historical movement substantially similar to the original Index, and the new Index and margin will result in an **ANNUAL PERCENTAGE RATE** that is substantially similar to the rate in effect at the time the original index becomes unavailable. We may prohibit additional extensions of credit or reduce your Credit Limit during any period in which the maximum **ANNUAL PERCENTAGE RATE** under your Equity Maximizer Account is reached.

**Collection Costs.** We may hire or pay someone else to help collect any and all monies due pursuant to this Agreement if you do not pay. You will pay us those amounts. This includes, subject to any limits under applicable law, our attorneys' fees and our legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, you also will pay any court costs, in addition to all other sums provided by law.

**Rate Increase.** In addition to our other rights during termination and acceleration, we may increase the variable **ANNUAL PERCENTAGE RATE** under this Agreement to a maximum of 24.00% percent per annum. The **ANNUAL PERCENTAGE RATE** will not exceed the maximum rate permitted by applicable law. If we do not increase the **ANNUAL PERCENTAGE RATE** upon termination or acceleration of your Equity Maximizer Account, it will continue at the variable rate in effect as of the date of termination or acceleration of your Equity Maximizer Account.

**Access Devices.** If your Equity Maximizer Account is suspended or terminated, you must immediately return to us all Special Convenience Checks and any other access devices. Any use of Special Convenience Checks or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of Special Convenience Checks or other Equity Maximizer Account access devices not returned to us.

**Delay in Enforcement.** We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice. For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid.

**Cancellation by you.** If you cancel your right to credit advances under this Agreement, you must notify us and return all Special Convenience Checks and any other access devices to us. Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement.

**Prepayment.** You may prepay all or any amount(s) owing under the variable revolving portion of this Equity Maximizer Account at any time, without penalty. However, we will be entitled to receive all accrued FINANCE CHARGES, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Equity Maximizer Account. You agree not to send us payments marked "paid in full", "without recourse" or similar language. If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us. All written

Case: 14-52923    Doc# 26-5    Filed: 06/28/16    Entered: 06/28/16 16:27:51    Page 9 of 32

communications concerning disputed amounts, including any checks or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to us at the address shown on your statement.

**Notices.** All notices will be sent to your address as shown in this Agreement. Notices will be mailed to you at a different address if you give us written notice of a different address. You agree to advise us promptly if you change your mailing address.

**Credit Information and Related Matters.** You authorize us to release information about you to third parties as described in our Privacy Policy and our Fair Credit Reporting Act notice, provided you did not opt out of the applicable policy, or as permitted by law. You agree that upon our request, you will provide us with a current financial statement, a new credit application, or both, on forms provided by us. You also agree we may obtain credit reports on you at any time, at our sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition. We may require a new appraisal of the Property which secures your Equity Maximizer Account at any time, including an internal inspection, at our sole option and expense.

**Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Equity Maximizer Account and your rights and obligations under this Agreement to another lender, entity, or person, and to assign our rights under the Security Instrument securing this Agreement. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives. Upon any such sale or transfer, we will have no further obligation to provide you with credit advances or to perform any other obligation under this Agreement.

**Tax Consequences.** You understand that neither we, nor any of our employees or agents, make any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Equity Maximizer Account, including the deductibility of interest, and that neither we nor our employees or agents will be liable in the event interest on your Equity Maximizer Account is not deductible. You should consult your own tax advisor for guidance on this subject.

**Use of the Equity Maximizer Account.** There are some additional rules about how Borrower uses the Equity Maximizer Account:

**A. Legal Transactions.** Borrower agrees that Borrower will only use the Equity Maximizer Account for transactions that are legal where Borrower resides. For example, Internet gambling transactions may be illegal in Borrower's state. Display by an on-line merchant of either Lender's logo or a Card Company's logo does not mean that an Internet transaction is legal where Borrower resides. Lender will not be liable if Borrower engages in an illegal transaction.

**B. Authorizations.** Some transactions require Lender's prior authorization. For security purposes, Lender may from time to time place or change limits on the number or amounts of transactions Borrower makes in a day at ATMs or point of sale terminals. Such limitations may not be the same at every ATM or point of sale terminal. No such limits are placed on the number or amounts of transactions Borrower makes: at Lender's banking centers, by writing a Special Convenience Check, by conducting an Overdraft Protection transaction (subject to the ATM limits, above), or by telephone. In addition, Lender may deny authorization to any method of accessing the Equity Maximizer Account if the Equity Maximizer Account has been suspended or terminated or if Lender suspects fraudulent activity. Lender shall not be liable for any failure to authorize a transaction for any of these reasons. However, Borrower is liable for any transaction Lender authorizes even if Lender should not have authorized it because Borrower is or would be in default as a result of the transaction.

**C. No Security Interest on Purchases.** This Agreement does not grant Lender a security interest in purchases Borrower charges to the Equity Maximizer Account.

**D. Transactions With Merchants.** (a) If a merchant discloses a policy such as "no returns", "no refund", "no return or credit without receipt", "as is", "store credit only", or "all sales final", or similar language, Borrower will be bound by that policy when Borrower uses the Equity Maximizer Account to buy goods or services from that merchant. (b) When using the Equity Maximizer Account to make travel or lodging reservations, Borrower must obtain the merchant's cancellation policy and follow it if Borrower cancels. If Borrower cancels, Borrower must obtain the cancellation number that the merchant is required to give Borrower. The merchant may charge Borrower for a cancelled transaction unless Borrower can provide Lender with a correct cancellation number. If Borrower makes reservations or purchases of any kind, such as a lodging reservation for several nights stay or a mail order purchase, the Equity Maximizer Account may be immediately charged for the full amount of the reservation or purchase, regardless of whether Borrower has received the goods or services requested at the time the Equity Maximizer Account is charged. (c) If Borrower authorizes a merchant to charge the Equity Maximizer Account for repeat transactions without the Account Access Card, then Borrower must notify the merchant when Borrower wants to discontinue the repeat transactions or if the Equity Maximizer Account is closed or if a new Equity Maximizer Account or Account Access Card number is issued by Lender. Otherwise, Borrower will be responsible to Lender for the amount of all such repeat transactions. (d) If Borrower disagrees with a transaction on Borrower's statement or has a dispute with a merchant as a result of a transaction, Borrower

Case: 14-52923   Doc# 26-5   Filed: 06/28/16   Entered: 06/28/16 16:27:51   Page 10 of 32

will provide Lender with information or assistance Lender reasonably requests. Otherwise, Borrower will pay Lender for any resulting loss Lender has, unless Lender is prohibited by applicable law from holding Borrower liable for Lender's loss. (e) If Borrower makes a transaction in a currency other than U.S. dollars, VISA will convert the charge or credit into a U.S. dollar amount. The conversion rate will be determined using VISA currency conversion procedures that are disclosed to institutions issuing VISA cards. The conversion rate on the processing date may differ from the rate on the date of Borrower's transaction. Currently, VISA uses a currency conversion rate of either: (1) a wholesale market rate or (2) a government mandated rate, increased by 1% ("Foreign Currency Margin"). In each case, VISA uses the rate in effect one day before the conversion date. The U.S. dollar amount and the "rate" shown on the Statement for each foreign currency transaction include only the 1% retained by VISA. In the event VISA chooses to change the Foreign Currency Margin, the currency conversion rate, or the day on which the currency conversion rate is determined, then transactions on the Equity Maximizer Account made in a foreign currency and processed after the change will reflect the change.

**E. Special Rules for Account Access Card Purchases (Not available in ID, OR and WA).** If Borrower has a problem with the quality of goods or services that Borrower purchased with an Account Access Card, and Borrower has tried in good faith to correct the problem with the merchant, Borrower may not have to pay the remaining amount due on the goods or services. Borrower has this protection only when the purchase price was more than $50 and the purchase was made in Borrower's home state or within 100 miles of Borrower's mailing address. (If Lender owns or operates the merchant, or if Lender mailed Borrower the advertisement for the property or services, all purchases are covered regardless of amount or location of purchase).

**Overdraft Protection and Linked Accounts (Not available in CA and OR).** If the Equity Maximizer Account is not blocked, suspended or terminated, you may request that the Equity Maximizer Account be set up to provide overdraft protection for an associated checking or money market savings account. If the total amount of checks or other debits for a business day exceeds the available associated account balance, then an advance will be made from the Equity Maximizer Account ("Overdraft Protection"). If the Equity Maximizer Account is used for Overdraft Protection, the minimum transfer amount will be in multiples of one hundred dollars ($100) and incremental transfer amounts will be in multiples of one hundred dollars ($100). However, if there is not $100 available, but the available Equity Maximizer Account amount can cover the overdraft transaction, then the amount of the available Equity Maximizer Account will be advanced to cover the overdraft. (Note: for ID and WA, the incremental advance is $25. If the available credit on your account will not allow a $25 increment to be advanced, no transfer will be made). If the associated account is closed or blocked, Overdraft Protection will stop. If you request that the Equity Maximizer Account be connected to or "linked" to another Bank of America product, you understand and agree that a user on the "linked" account can make a transaction that exceeds the available balance on the "linked" account and cause an advance to be made. Also, if an ATM access card is given to a user on the "linked" account, that user when using the ATM access card may access the Equity Maximizer Account and obtain an advance without making a transaction directly on the "linked" account. That user may or may not be a party obligated for this Agreement.

**Skip Payment Feature.** At our discretion, from time to time we may offer a feature that will allow you to skip one or more payments. FINANCE CHARGES will continue to accrue on the principal balance at the applicable interest rate. At the end of the skip payment period, the payment terms of this Agreement will be reinstated automatically without further notice.

**Automatic Payment and Reservation of Rights.** If you choose to have payments made from a designated account and have arranged with us to do so, we will automatically draft the payment. Drafts will be made on the payment due date or immediately after the payment due date (if the payment due date is on a Saturday, Sunday or legal holiday). If your account does not contain the payment amount due, you understand that it is your obligation without notice from us to make the full payment. Even if you make a manual payment an automatic payment will be drafted from your designated account, unless you make such manual payment for the full payment due at least three (3) business days prior to the due date; however, if you make less than a full manual payment at least three (3) business days prior to the due date, only the remaining amount currently due will be drafted. To stop an automatic draft, you must contact us at least three (3) business days prior to the scheduled payment draft date. We may accept late payments, partial payments or checks and money orders marked "payment in full" (or similar notations) or payments accompanied by a letter stating that our acceptance of the payment indicates our agreement to the terms set forth in the letter without giving up, waiving or losing any of our rights under law or under this Agreement.

**Additional Suspension or Reduction Information.** Notwithstanding the notice of default provision contained in section (3) in the Suspension or Reduction section above, our suspension of Equity Maximizer Account privileges will be effective immediately. Written notice will be mailed to you within three (3) business days after the suspension of privileges.

**Miscellaneous.** If this Note or Agreement represents a renewal, modification, extension, substitution or consolidation of an obligation owed to us, then you acknowledge and agree that there are no claims, setoffs, avoidances, counterclaims or defenses or rights to claims, setoffs, avoidances, counterclaims or defenses to payment or enforcement of the prior obligation. You agree that if this Note or Agreement is in default, including the failure to make the Minimum Payment by the due date, you will accept calls regarding the collection of this Note or Agreement at any residence or place of employment. The calls can be automatically dialed and a recorded message may be played. You agree such calls will not be "unsolicited" calls for purposes of any federal, state or local law. To improve customer service and security, telephone communications with you may be monitored and

Case: 14-52923   Doc# 26-5   Filed: 06/28/16   Entered: 06/28/16 16:27:51   Page 11 of 32

recorded. You agree that monitoring or recording may be done and that no additional notice to you or additional approval from you is needed. You authorize us, our parent company, Bank of America corporation (or any successor company) and Bank of America corporation's affiliates and subsidiaries ("Affiliates") to: (a) obtain other information deemed necessary concerning the granting and maintaining of this Note or Agreement, including the obtaining of credit bureau and other reports concerning your credit experience and other information from credit reporting agencies, creditors, any department of motor vehicles or similar state agency, your employer (past, present and future) and other persons (and all such entities may release and/or verify such information to us at any time without notification to you or without your consent), and (b) share information with our Affiliates, except to the extent that you have opted out of such sharing as provided in our Privacy Policy for consumers. This Note or Agreement constitutes the entire understanding and agreement between the parties as to the matters set forth in this Note or Agreement and supercedes all prior understandings and correspondence, oral or written, with respect to the subject hereof. We reserve the right to defer or delay the date certain changes are to occur without notice and without being liable for any such deferment or delay. A court decree for divorce or separation or non-court approved mutual agreement does not affect, eliminate or reduce any person's liability for the Note or Equity Maximizer Account balance if we are not a party to the decree or agreement. Notwithstanding any other provision contained in the Note or this Agreement, we do not intend to charge, and you shall not be required to pay, any amount of finance charge or fee more than the maximum permitted by applicable law. Any payment in excess of the maximum shall be refunded to you or credited against principal, at our option. If this Note or Agreement is a renewal of a prior Note or Agreement, then it is the intent of the parties that the Note or Agreement evidencing the original extension of credit not be extinguished by the renewal. It is further the intent of the parties that no novation shall occur by the renewal of such extension of credit. Our records shall be evidence of whether this Note or Agreement is a renewal. The word "you" shall also mean Borrower. The word "we" shall also mean Lender.

**Request to Issue Account Access Card and PIN and Other Instructions (not available in IO, OR and WA).** This section shall not apply if issuance of an Account Access Card is prohibited by law, or if the property securing this Agreement is located in the states of Texas or New York (in which case, all references in this Agreement to an "Account Access Card" are deleted). During the Draw Period, any one Borrower may request Lender to issue a card as described in this section, enabling access to the Account, and an associated Personal Identification Number (PIN). Any Borrower may request that such cards be provided to as many as, but no more than, the first three Borrowers listed at the top of this Agreement or who may be later added as a Borrower, or to fewer Borrowers, and to any other person who may be later added as a Borrower (provided that no more than the first three Borrowers may have such cards). Each Borrower is liable for all transactions made with such cards.

Any Borrower may give Lender any other directions with regard to such cards, including, but not limited to, terminating all of them.

All requests or directions, at Lender's option, may be made verbally or in writing. Borrower(s) agree that the cards will be used only as described in this Agreement. Borrower(s) further agree that the cards may be issued by Lender through an arrangement Lender may have from time to time with a card company (the "Card Company"), such as VISA. All references in this Agreement to an "Account Access Card" shall mean the card or cards described in this paragraph.

**Borrowers Protection Plan ™.** (Borrowers Protection Plan is a registered trademark of Bank of America Corporation). Fixed Rate Loan Options may be protected by the Borrowers Protection Plan. Protection options include Disability, Involuntary Unemployment, and Accidental Death; or Disability and Accidental Death; or Involuntary Unemployment and Accidental Death. Two Borrowers may purchase Protection for each Fixed Rate Loan Option, but they must select the same coverage option, and there may be restrictions on which borrowers may apply. To qualify, you must meet all requirements as set forth in the Addendum for the Borrowers Protection Plan.

The Borrowers Protection Plan is optional and not required to obtain a new Fixed Rate Loan Option. For each Fixed Rate Loan Option, you must specifically request the Borrowers Protection Plan, and you must sign a separate Addendum to this Agreement, even if you obtained the Borrowers Protection Plan for a prior Fixed Rate Loan Option.

Fees for the Borrowers Protection Plan are based on and payable with the regularly scheduled monthly payment of the Fixed Rate Loan Option. Fixed Rate Loan Options with quarterly payments are not eligible for the Borrowers Protection Plan. Interest is not charged on the fees for Borrowers Protection Plan.

The maximum term of the Borrowers Protection Plan is the shorter of the Fixed Rate Loan Option term or 120 months.

We may allow you to exceed the Credit Limit temporarily and from time to time, to accommodate the premiums for the Borrowers Protection Plan.

**Fixed Rate Loan Option Payment Information.** A Fixed Rate Loan Option has a fixed interest rate and fixed term and is payable monthly. You may convert part or all of the Variable Rate Principal Balance, along with accrued interest, fees, the Fixed Rate Loan Option conversion fee and any voluntary insurance charge to a Fixed Rate Loan Option at any time during the Draw Period or the Repayment Period. We will help you establish the amount of principal and interest sufficient to amortize the Fixed Rate Loan Option over the term you select. The maximum term of any Fixed Rate Loan Option may not exceed the Repayment

Case: 14-52923    Doc# 26-5    Filed: 06/28/16    Entered: 06/28/16 16:27:51    Page 12 of 32

Period maturity date of this Agreement. The minimum amount for a Fixed Rate Loan Option is $5,000. You may have up to three (3) Fixed Rate Loan Options open at any one time, but may not have more than four (4) Fixed Rate Loan Options open during any one statement period. You may convert all or part of the Variable Rate Balance, plus the Fixed Rate Loan Option conversion fee to a Fixed Rate Loan Option unless you are in default or if your credit advance privileges are suspended or terminated. If you request a Fixed Rate Loan Option, but the Variable Rate Balance is less than the amount requested, we will hold your request at the fixed interest rate offered to you for up to five (5) business days. If by the end of the fifth day the Variable Rate Balance is still less than the amount of your request, it will not be processed. There may be a conversion fee charged for the establishment of each Fixed Rate Loan Option. Please refer to "Conditions Under Which Other Charges May Be Imposed" elsewhere in this Agreement for information about the conversion fee. The Fixed Rate Loan Option ANNUAL PERCENTAGE RATE is the Prime Rate plus the Fixed Rate Loan Option margin of 8.000%. However, we may make lower Fixed Rate Loan Option rates available from time to time. Please contact your Banking Center or Customer Service for the Fixed Rate Loan Option rate currently offered. Your payment will be a fixed dollar amount to be determined at the opening of the Fixed Rate Loan Option. You may arrange a different payment date for each Fixed Rate Loan Option. Fixed Rate Loan Option payments will be billed separately from your Regular Payment in accordance with the schedule you have arranged. For Fixed Rate Loan Options, you may choose to receive a separate bill. However, the Variable Rate Balance statement will show all activity, including payments.

**Governing Law.** This Agreement will be governed by and interpreted in accordance with federal law and the laws of the State of North Carolina. This Agreement has been accepted by us in the State of North Carolina.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Interpretation.** You agree that this Agreement, together with the Security instrument, is the best evidence of your agreements with us. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Security Instrument or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic statement is the best evidence of your obligation to pay.

**Severability.** If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Acknowledgment.** You understand and agree to the terms and conditions in this Agreement. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a completed copy of this Agreement, including the Fair Credit Billing Notice and the early home equity line of credit application disclosure, in addition to the handbook entitled "When Your Home Is On The Line: What You Should Know About Home Equity Lines of Credit," given with the application.

This Agreement is dated

**THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

BORROWER:

X _____ (Seal)    X _____ (Seal)
MAXIMINO. RODRIGUEZ                    MARIA E. RODRIGUEZ

X _____ (Seal)    X _____ (Seal)

Effective Disbursement Date: 12/10/04

Case: 14-52923   Doc# 26-5   Filed: 06/28/16   Entered: 06/28/16 16:27:51   Page 13 of 32

# BILLING ERROR RIGHTS

## YOUR BILLING RIGHTS

### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify us in case of errors or questions about your bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

> Your name and account number.

> The dollar amount of the suspected error.

> Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

**Your rights and our responsibilities after we receive your written notice.**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

Case: 14-52923    Doc# 26-5    Filed: 06/28/16    Entered: 06/28/16 16:27:51    Page 14 of 32

Exhibit "2"

Submitted for recordation by, and when recorded.
return to:

# Bankof America 

Branch      Consumer Collateral Tracking
Address     9000 Southside Blvd., Bldg. 700
City        Jacksonville
State       FL
Zip         32256
Loan #:
Reference #

Stephen L. Vagnini
Monterey County Recorder            12/21/2004
Recorded at the request of          14:05:28
Filer

DOCUMENT: **2004135227**    Titles: 1/ Pages: 2

Fees....    11.00
Taxes...
Other...
AMT PAID    $11.00

Space above this line for Recorder's Use

## SHORT FORM DEED OF TRUST
### (EQUITY MAXIMIZER® ACCOUNT)

This Deed of Trust is made on __**10th December, 2004**__ by_____

MAXIMINO RODRIGUEZ AND MARIA E. RODRIGUEZ, WHO ARE MARRIED TO EACH

OTHER

_____

_____

(collectively and individually "Trustor"); PRLAP, INC. ("Trustee"); and the beneficiary, Bank of America, N.A. ("Bank").
Trustee is a subsidiary of Bank. Any non-titleholder signs below as Trustor solely for the purpose of subjecting any
community property interest in the property described below to this Deed of Trust. The words "I," "me," and "my"
in this Deed of Trust refer to the Trustor, whether one or more.

Bank and I agree:

1. **Property Security.** For the purpose of securing the obligations described below, I irrevocably grant, convey,
transfer and assign to Trustee, in trust with power of sale, the property located in_____
MONTEREY _____ County, California described as follows:

LOT 1 IN BLOCK 1, AS SHOWN ON THAT CERTAIN MAP ENTITLED "TRACT NO.
1375 FALCON RIDGE" FILED FOR RECORD JANUARY 29, 2002 IN VOLUME 22
"CITIES AND TOWNS" AT PAGE 11, FILED IN THE OFFICE OF THE COUNTY
RECORDER, COUNTY OF MONTEREY, STATE OF CALIFORNIA.

with the street address: 1074 PARTRIDGE WAY, SALINAS, CA 93905
and with Parcel No. 153-641-001 _____ and including all improvements and fixtures now or later
erected on the property, and all easements, rights, appurtenances and fixtures now or later a part of or related to
the above described property (collectively the "Property").

2. **This Deed of Trust secures :**
  - All obligations of the borrowers in the Equity Maximizer Agreement and Disclosure, dated ___12/10/04____
  _____ and naming ___MAXIMINO RODRIGUEZ AND MARIA E. RODRIGUEZ_____
  _____ as borrowers, for
  a revolving line of credit account (the "Agreement"), as well as any modifications and renewals of the Agreement.
  The Agreement provides for a Total Credit Commitment (as defined in the Agreement) of $ 40,000.00 _____,
  allows for repeated credit advances drawn against the Total Credit Commitment, and provides for a variable interest
  rate. By mutual agreement, Bank may increase the Total Credit Commitment ("Increased Credit Commitment"); and
  - Trustor's performance of each obligation in this Deed of Trust.

Page 1 of 2                                               Bank of America

Case: 14-52923    Doc# 26-5    Filed: 06/28/16    Entered: 06/28/16 16:27:51    Page 16
of 32

This Deed of Trust will not secure borrowers' obligations under the Agreement in excess of the Total Credit Commitment or Increased Credit Commitment, except for any amounts due to: (a) unpaid interest, or (b) expenses that Bank incurs because obligations of a borrower under the Agreement are not fulfilled (including without limitation, any advances that Bank makes to perform borrowers' duties to pay taxes, insurance, etc.).

**To Protect the Security of this Deed of Trust, I Agree:** By the execution and delivery of this Deed of Trust and the Equity Maximizer Agreement and Disclosure secured hereby, that provisions (3) to (20), inclusive of the fictitious deed of trust recorded in ____MONTEREY____ County 07/13/99 , as Instrument 9952918 in Book/Reel and at Page/Image of the Official Records of the County Recorder of that county, (which provisions, identical in all counties, are printed on the following pages) hereby are adopted and incorporated herein and made a part hereof as though set forth at length; and I will observe and perform such provisions; and that the reference to Property, obligations, and parties in such provisions shall be construed to refer to the Property, obligations, and parties set forth in this Deed of Trust.

Trustor requests that a copy of ANY NOTICE OF DEFAULT AND ANY NOTICE OF SALE under this Deed of Trust be mailed to Trustor at the Trustor's address shown below, or if no address is shown, then at the address of the Property.

| Signature | Mailing Address for Notices: |
| --- | --- |
| | Street          City and State |

MAXIMINO RODRIGUEZ
**MAXIMINO RODRIGUEZ**

1074 PARTRIDGE WAY SALINAS, CA 93905

Maria E Rodriguez
**MARIA E. RODRIGUEZ**

## GENERAL ACKNOWLEDGMENT

State of California
County of Monterey
On December 19 2004 before me, Mary C Rodriguez , personally appeared
Maximino Rodriguez and Maria E. Rodriguez

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature Mary C Rodriguez (SEAL)

MARY C. RODRIGUEZ
Commission # 1390648
Notary Public - California
Monterey County
My Comm. Expires Jan 10, 2007

## END OF DOCUMENT

Case: 14-52923    Doc# 26-5    Filed: 06/28/16    Entered: 06/28/16 16:27:51    Page 17 of 32

Exhibit "3"

In re    **Maximino Rodriguez,**                              Case No. _____
         **Maria Evelia Rodriguez**

Debtors

## SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| Small house in La Encarnacion, Acambaro, Guanajato, MEXICO. Vacant for one year. Received as gift in 1990. Stated value is per local commissioner dated 5/14/14. | Fee, free and clear | W | 269.00 | 0.00 |
| Residence at 1074 Partridge Way, Salinas, Monterey County, CA. Stated value is per zillow.com as of 7/1//14. | Fee subject to two trust deeds | C | 291,974.00 | 249,217.86 |

|  | Sub-Total > | 292,243.00 | (Total of this page) |
|---|---|---|---|
|  | Total > | 292,243.00 | |

__0__ continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

In re    **Maximino Rodriguez,**                 Case No. _____
        **Maria Evelia Rodriguez**

_____

Debtors

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|
| **Account No. xxxxxxxxxxx** | | | | Second trust deed | | | | | |
| **Bank of America** 1461 Piedmont Pkwy Greensboro, NC 27410 | C | | | Residence at 1074 Partridge Way, Salinas, Monterey County, CA. Stated value is per zillow.com as of 7/1//14. | | | | | |
| | | | | Value $     291,974.00 | | | | 130,584.00 | 0.00 |
| Account No. | | | | First trust deed | | | | | |
| **California Housing Finance Agency** 1040 Riverview Pkwy, Suite 110 West Sacramento, CA 95605-1522 | C | | | Residence at 1074 Partridge Way, Salinas, Monterey County, CA. Stated value is per zillow.com as of 7/1//14. | | | | | |
| | | | | Value $     291,974.00 | | | | 118,633.86 | 0.00 |
| **Account No. xxxx:** | | | | Vehicle purchase loan | | | | | |
| **Monterey Credit Union** PO Box 3288 Monterey, CA 93942 | C | | | 2011 Toyota Tundra Double Cab pickup, 4-WD, 43,000 miles. Kelley Blue Book trade-in value is $22,080 but lien will be paid in full. | | | | | |
| | | | | Value $     26,453.00 | | | | 26,453.00 | 0.00 |
| **Account No. xxxxx** | | | | Vehicle purchase loan | | | | | |
| **Monterey Credit Union** PO Box 3288 Monterey, CA 93942-3288 | C | | | 2005 Mercedes C230, 80,000 miles. Kelley Blue Book trade-in value is $7160 but lien will be paid in full. | | | | | |
| | | | | Value $     9,000.00 | | | | 9,000.00 | 0.00 |

**0**   continuation sheets attached

| | | |
|---|---|---|
| Subtotal (Total of this page) | 284,670.86 | 0.00 |
| Total (Report on Summary of Schedules) | 284,670.86 | 0.00 |

Exhibit "4"

| PPPH Log prepared As Of: | 6/3/2016 | | | |
|---|---|---|---|---|
| Due Date | Amount Due | Amount Received | Date Received | Satisfied / Not Satisfied |
| System Credit | 0.00 | 0.00 | | |
| 7/30/2014 | 293.48 | 293.48 | 8/4/2014 | Satisfied 7/30/2014; PRI 10.00 |
| 8/30/2014 | 303.26 | 303.26 | 9/2/2014 | Satisfied 8/30/2014; PRI 0.74 |
| | | 9.78 | | PCN Adjustment 6/3/2016 |
| 9/30/2014 | 303.23 | 303.23 | 9/29/2014 | Satisfied 9/30/2014; PRI 0.02 |
| 10/30/2014 | 293.46 | 303.14 | 12/2/2014 | Satisfied 10/30/2014 |
| 11/30/2014 | 303.23 | 0.00 | | |
| 12/30/2014 | 293.46 | 0.00 | | |
| 1/30/2015 | 1027.14 | 0.00 | | |
| 2/28/2015 | 1007.59 | 0.00 | | |
| 3/30/2015 | 1017.36 | 0.00 | | |
| 4/30/2015 | 1027.15 | 0.00 | | |
| 5/30/2015 | 1017.36 | 0.00 | | |
| 6/30/2015 | 1027.15 | 0.00 | | |
| 7/30/2015 | 1017.36 | 0.00 | | |
| 8/30/2015 | 1027.15 | 0.00 | | |
| 9/30/2015 | 1027.14 | 0.00 | | |
| 10/30/2015 | 1017.37 | 0.00 | | |
| 11/30/2015 | 1027.14 | 0.00 | | |
| 12/30/2015 | 1017.37 | 0.00 | | |
| 1/30/2016 | 1027.01 | 0.00 | | |
| 2/29/2016 | 1043.27 | 0.00 | | |
| 3/30/2016 | 1043.26 | 0.00 | | |
| 4/30/2016 | 1053.91 | 0.00 | | |
| 5/30/2016 | 1043.26 | 0.00 | | |
| | 0.00 | 0.00 | | |
| Totals | 19258.11 | 1212.89 | | |

| | |
|---|---|
| Total Arrearage | -18045.22 |
| Number of Payments Due | 19 |
| Next Payment Due On | 6/30/2016 |
| Next Payment Due | 0 |
| FAI Fee - Prepetition Interest | 0 |
| FAP Fee - Prepetition Principal | 0 |
| FAM Fee - Prepetition Fees | 0 |
| Remaining Prepetition Arrearage | 0 |

A negative figure in Total Arrearage represents the total past due amount. A positive amount would be a partial payment credit.

# Exhibit "5"

**Bank of America** 🇺🇸

## EQUITY MAXIMIZER

### Home Secured Lines of Credit
### Credit Limit Increase Agreement

Borrower's Name  MAXIMINO RODRIGUEZ

Borrower's Name  MARIA RODRIGUEZ

Borrower's Name _____

Borrower's Name _____

Date:  08/29/06

Account No: _____

Property Address:

1074 PARTRIDGE,

SALINAS, CA 93905

Bank of America, N.A. has agreed to a credit limit increase on your EQUITY MAXIMIZER Account. Your new total credit limit will be $  150,000.00  .

To receive the credit limit increase, each person who originally signed either the  EQUITY MAXIMIZER Agreement and Disclosure or the Deed of Trust or Mortgage must sign the following documents:

1. Credit Limit Increase Agreement (this document)
2. Credit Limit Increase, Notice of Right to Cancel – Statement of Cancellation (CLS-60)

3. Modification of Deed of Trust
By signing below, you agree to the following:

1. After we receive all required documents, including additional title insurance coverage and evidence of additional fire and/or hazard insurance coverage, if applicable, we will notify you of the effective date of your new credit limit.

2. All amounts of credit you obtain up to your new credit limit are secured by the Deed of Trust or Mortgage. No other change will be made in the Agreement.

3. If you decide to cancel this credit limit increase in accordance with your Notice of Right to Cancel, no change will be made in your credit limit and you will not be subject to any charge in connection with your request for a credit limit increase.

4. The following closing costs are due.

☐ Check Attached
☐ Charge Account

- TOTAL CHARGES        $ 0.00

### 5. REQUEST FOR BANK OF AMERICA EQUITY MAXIMIZER ACCOUNT ACCESS CARD(S)

You hereby request us to send cards allowing you to access the available balance of your Equity Maximizer account (each an "Account Access Card") and associated Personal Identification Number to each of you who is both a borrower under your Bank of America Equity Maximizer Agreement and Disclosure Statement Secured by Deed of Trust ("Borrower") and a signer of this request. You also authorize the issuance of an Account Access Card to any additional Borrowers who have not signed this request, upon compliance with any procedures required by Bank of America from time to time. (You understand that Bank of America reserves the right to require that all Borrowers sign a request in order for any Account Access Cards to be issued.) You agree that use of the Account Access Cards will be governed by the following terms and conditions, as well as by the Bank of America Equity Maximizer Agreement and Disclosure Statement Secured by Deed of Trust, as both may be modified from time to time.

Any Borrower may change the PIN for all cards, and any Borrower may request Bank of America to cancel all such cards. Such request or changes, at Bank of America's option, may be made verbally or in writing.

Account Access Cards are not available if prohibited by law or if the property securing the Credit Line/Account is located in the states of Texas or New York.

A) **Legal Transactions.** You agree that you will only use the Account for transactions that are legal where you reside. For example, Internet gambling transactions may be illegal in your state. Display by an on-line merchant of either the logo of Bank of America, N.A. ("Bank of America") or a Card Company's logo does not mean that an Internet transaction is legal where you reside. Bank of America will not be liable if you engage in an illegal transaction.

B) **Authorizations.** Some transactions require Bank of America's prior authorization. For security purposes, Bank of America may from time to time place or change limits on the number or amounts of transactions you make in a day at ATMs or point of sale terminals. Such limitations may not be the same at every ATM or point of sale terminal. In addition, Bank of America may deny authorization for any method of accessing the Account if the Account has been suspended or terminated or if Bank of America suspects fraudulent activity. Bank of America shall not be liable for any failure to authorize a transaction for any of these reasons. However, you are liable for any transaction Bank of America authorizes even if Bank of America should not have authorized it because you are or would be in default as a result of the transaction.

C) **Transactions With Merchants.** (a) If a merchant discloses a policy such as "no returns", "no refund", "no return or credit without receipt", "as is", "store credit only", "all sales final", or similar language, you will be bound by that policy when you use the Account to buy goods or services from that merchant. (b) When using the Account to make travel or lodging reservations, you must obtain the merchant's cancellation policy and follow it if you cancel. If you cancel, you must obtain the cancellation number that the merchant is required to give you. The merchant may charge you for a cancelled transaction unless you can provide Bank of America with a correct cancellation number. If you make reservations or purchases of any kind, such as a lodging reservation for several nights stay or a mail order purchase, the Account may be immediately charged for the full amount of the reservation or purchase, regardless whether you have received the goods or services requested at the time the Account is charged. (c) If you authorize a merchant to charge the Account for repeat transactions without the Account Access Card, then you must notify the merchant when you want to discontinue the repeat transactions or if the Account is closed or if a new Account or Account Access Card number is issued by Bank of America. Otherwise, you will be responsible to Bank of America for the amount of all such repeat transactions. (d) If you disagree with a transaction on your statement or have a dispute with the merchant as a result of the transaction, you will provide Bank of America with information or assistance Bank of America reasonably requests. Otherwise, you will pay Bank of America for any resulting loss Bank of America has, unless Bank of America is prohibited by applicable law from holding you liable for Bank of America's loss. (e) If you make a transaction in a currency other than U.S. dollars, the Card Company will convert the charge or credit into a U.S. dollar amount. The conversion rate will be determined using the Card Company's currency conversion procedures that are disclosed to institutions issuing Card Company's cards. The conversion rate on the processing date may differ from the rate on the date of your transaction. Currently, Visa uses a currency conversion rate of either (1) a wholesale market rate or (2) a government mandated rate, increased by 1% ("Foreign Currency Margin"). In each case, Visa uses the rate in effect one day before the conversion date. The U.S. dollar amount and the "rate" shown on the statement for each foreign currency transaction include only the 1% retained by Visa. In the event Visa chooses to change the Foreign Currency Margin, the currency conversion rate, or the day on which the currency conversion rate is determined, then transactions on the Account/Credit Line made in a foreign currency and processed after the change will reflect the change.

D) **Limitation of Bank of America's Liability.** Bank of America's liability, if any, for wrongful dishonor of an Advance is limited to your actual damages. Bank of America will not be liable if any merchant, financial institution or ATM refuses to honor the Account Access Card.

E) **Date of Advance.** For an Account Access Card transaction, the date of the Advance is the date the charge against the Account Access Card is presented to Bank of America or Bank of America's agent for payment.

F) **Termination of Account.** Upon termination of the Account, by Bank of America or you, you will immediately destroy all Account Access Cards. If you are in default, Bank of America may request you destroy all Account Access Cards.

G) **Lost or Stolen Account Access Cards.** Bank of America reserves the right not to honor any Account Access Card if any of them has been reported lost or stolen. Bank of America also reserves the right not to honor Credit Line Checks that have been reported lost or stolen.

H) **Liability for Unauthorized Account Access Card Transactions.** You are not liable for unauthorized use of your Account Access Card, just notify us promptly if you believe your Account Access Card has been lost or stolen or if you discover any unauthorized transactions. Bank of America may require you to provide a written statement regarding claims of unauthorized Account Access Card transactions.

I) **Special Rule for Account Access Card Purchases.** If you have a problem with the quality of goods or services that you purchased with an Account Access Card, and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services. You have this protection only when the purchase price was more than $50 and the purchase was made in your home state or within 100 miles of your mailing address. (If Lender owns or operates the merchant, or if Lender mailed you the advertisement for the property or services, all purchases are covered regardless of amount or location of purchase.)

J) **Miscellaneous.** All references to "you" and "your" mean each borrower under the Bank of America Equity Maximizer. "Card Company" means the entity that issues the Account Access Card, such as Visa International. All other capitalized terms have the same meaning as that defined in the Bank of America Equity Maximizer Agreement and Disclosure Statement Secured by Deed of Trust.

6. Your margin may increase or decrease as a result of your line increase.

Each person signing below agrees to all of the items and conditions of the Credit Limit Increase Agreement.

X ~~Maximino Rodriguez~~  8-29-06   X ~~Maria S Rodriguez~~  8-29-06
Signature  MAXIMINO RODRIGUEZ        Date        Signature  MARIA RODRIGUEZ        Date

X _____   _____    X _____   _____
Signature                    Date            Signature                   Date

California

Submitted for Recordation By and Return to

**Bank of America** ⟫⟫
Recording requested by: LSI

Ot  When recorded return to :
Ad  **Custom Recording Solutions**
Cit  **2550 N. Redhill Ave.**
Su  **Santa Ana, CA. 92705**
Zip

Loan #: _____
Reference #: _____

Stephen L. Vagnini    RALICIA
Monterey County Recorder   9/21/2006
Recorded at the request of   13:43:45
**Filer**

**DOCUMENT: 2006083096**  Titles: 1/ Pages:

Fees        23 00
Taxes
Other
AMT PAID    $23 00

——(Space Above This Line For Recording Data)——

# MODIFICATION OF DEED OF TRUST – MODIFICATION AGREEMENT

## CREDIT LIMIT INCREASE

This MODIFICATION AGREEMENT is entered into as of ___08/29/06___ , by and between:

__MAXIMINO RODRIGUEZ AND MARIA RODRIGUEZ, WHO ARE MARRIED TO EACH OTHER__

(collectively and individually "Trustor"); PRLAP, INC. ("Trustee"); and the beneficiary, BANK OF AMERICA, N.A. ("Bank"), with reference to the following facts:

I.    MAXIMINO RODRIGUEZ           MARIA RODRIGUEZ

(collectively and individually "Borrower") executed an __EQUITY MAXIMIZER__ Agreement and Disclosure Statement ("Agreement") dated __05/10/05__ , with an original credit limit of $ __150,000.00__ . Borrower's prompt and due performance under the terms of the Agreement is secured by a deed of trust ("Deed of Trust") dated __05/10/05__ , which Deed of Trust was recorded on __07/12/05__ , as Instrument No. __2005070307__ , Official Records of the County Recorder of __MONTEREY__ County, State of California, and which Deed of Trust encumbers real property commonly known as

1074 PARTRIDGE, SALINAS, CA 93905

Page 1 of 4              Bank of America

Case: 14-52923   Doc# 26-5   Filed: 06/28/16   Entered: 06/28/16 16:27:51   Page 27 of 32

and more particularly described as follows: ("Property"):

SEE SCHEDULE "A" ATTACHED HERETO AND MADE A PART HEREOF:

Q2\\1'0\JT

II.    Borrower has asked Bank to increase the credit limit under the Agreement
to $ 160,000.00  , and to secure said additional advance and Agreement, as
s o revised, by this Modification Agreement. Borrower and Bank have amended
certain provisions of the Agreement to reflect said increased credit limit and now
wish to modify the Deed of Trust to reflect this event.

III.    Bank of America, N.A., formerly Bank of America NT&SA, formerly
Security Pacific Bank National Bank.

NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, the receipt and
adequacy of which are hereby acknowledged, Trustor and Bank hereby modify and amend
the Deed of Trust as follows:

1. As of the date hereof, the second paragraph of the Deed of Trust is revised to
reflect the fact that the Agreement is revised to provide for a Total Credit Commitment of
$ 160,000.00  , and the Deed of Trust secures to Bank, in addition to the
obligations set forth therein, the full repayment of the debt evidenced by the Agreement,
as revised to reflect the increased credit limit, together with interest and all applicable fees
as calculated under the agreement.

Bank of America

Case: 14-52923   Doc# 26-5   Filed: 06/28/16   Entered: 06/28/16 16:27:51   Page 28 of 32

This Modification Agreement shall be deemed to be made under and subject to the laws of the State where the Property is located. Except as herein modified, it is expressly agreed that all of the terms and provisions of the Deed of Trust shall remain in full force and effect. Any non-titleholder signs below as Trustor solely for the purpose of subjecting any community property interest in the property described below to this Deed of Trust.


_MAXIMINO RODRIGUEZ_
MAXIMINO RODRIGUEZ

_MARIA RODRIGUEZ_
MARIA RODRIGUEZ

As Bank and on Behalf of Trustee:
BANK OF AMERICA, N.A. and as an
ex-officio agent of PRLAP, INC.

By: _Kate Fried_

KATE FRIEDERICH
AUTHORIZED OFFICER

Page 3 of 4

Bank of America

Case: 14-52923    Doc# 26-5    Filed: 06/28/16    Entered: 06/28/16 16:27:51    Page 29 of 32

GENERAL ACKNOWLEDGEMENT

State of California
County of _____

On _____ before me, _____ _____ Notary Public, personally appeared _____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____

UNA PADILLA
Commission # 1628993
Notary Public - California
Monterey County
My Comm. Expires Dec 12, 2009

GENERAL ACKNOWLEDGEMENT

State of California
County of _____

On _____ before me, _____ , personally appeared _____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____

GENERAL ACKNOWLEDGEMENT

State of California
County of _____

On _____ before me, _____ , personally appeared _____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____

Page 4 of 4

Bank of America

# GENERAL ACKNOWLEDGMENT

STATE OF <u>California</u> )
COUNTY OF <u>Sacramento</u> )

On <u>9/06/06</u> before me <u>P.L. DUNLAP, Notary Public</u>
personally appeared <u>KATE FRIEDERICH</u>
<span style="font-size:small">name of Signer(s)</span>

---

personally known to me or proved to me on the basis of satisfactory evidence to
be the person(s) whose names(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed
the instrument.

WITNESS my hand and official seal.

_____
Signature of Notary Public

P. L. DUNLAP
Commission # 1582677
Notary Public - California
Sacramento County
My Comm. Expires May 27, 2009

Seal

Order ID:                                    Loan No.:

## EXHIBIT A
## LEGAL DESCRIPTION

Lot 1 of Block 1 in TRACT #1375 FALCON RIDGE Subdivision, City of SALINAS, County of MONTEREY, in the State of CA. As recorded in MB22 PG11

WITH THE APPURTENANCES THERETO.
APN: